## MOORE & PORTER *vs.* McCULLOUGH.

The judgment of the Circuit Court in this case was affirmed by a division of the Court.— See same case in 5 Mo. Rep., 141, and 6 *Ibid.*, 444.

APPEAL from Cooper Circuit Court.

| 8 | 401 |
|---|---|
| 53a | 614 |
| 8 | 401 |
| 116 | 136 |
| 8 | 401 |
| 74a | 291 |

HAYDEN *and* DAVIS, *for Appellant.*

1. In order to entitle the complainant to a decree against the defendants for a specific performance of the contract for the lot in question, it devolves upon him to show that he has fully paid for the lot, as stated in his original bill of complaint; or that he has fully satisfied the plaintiff therefor, under the alleged agreement and settlement of accounts, as set forth in his said amended bill of complaint. By the evidence in the cause, he has not sustained the allegations in either bill.

2. A decree for a specific performance of a contract is a matter in the sound discretion of the court; and unless the court be satisfied, from all the circumstances, that the claim of complainant to the decree prayed for be fair, just, and free from all fraud and circumvention on the part of complainant, the court cannot, upon principles of equity, interpose in his behalf, but will leave him to his remedy at law. — 6 Johns. Chan. Rep., 223, Seymour *vs.* Delancey, and authorities there cited; 1 Maddock's Chan. Rep., 405; 2 Peters' Cond. Rep., 116; 1 Bacon, 110, 111; 5 Peters, 276, Cathcart and Others *vs.* Robinson; 2 Johns. Chan. Rep., 23, Osgood *vs.* Franklin; 2 Cowen, 139; 3 Cowen, 504.

3. If the facts of this case, as shown by the testimony, satisfy the mind of the chancellor that the complainant, by fraudulent representations to the defendants, Moore & Porter, procured from them an agreement to settle, and an actual settlement of the account for carpenter's work done upon the house mentioned in the amended bill, and by such fraud and false representations obtained from them, Moore & Porter, an allowance for a larger sum of money than the work was actually worth, then the complainant has no right to set off the amount so allowed against the price which he agreed to pay for the lot.

4. The court erred in refusing to permit the defendants to show, by the deposition of Luther Carter, that the work done upon the house of defendants was only, by admeasurement, worth $865 56, as also in rejecting the testimony of James Carter and Jesse Homan, as offered by defendants.

5. The court erred in permitting James Huston, one of the defendants and an interested witness, to testify in the cause.

ADAMS *and* LEONARD, *for Appellee.*

1. Huston was properly received as a witness. — See 1 Phillips' Ev., 63, in notes; 1 Johns. Rep., 556, 576, 577, Bebee and Others *vs.* Bank of New York;

Trustees of Huntingdon *vs.* Nicoll, 3 Johns. Rep., 566; 2 Johns. Chan. Rep., 550, 626; 1 Pierre Williams, 596, in point.

2. There was no foundation laid in defendants' answer to open and surcharge the settlement alleged in the amended bill.

3. The settlement was conclusive, and could only be opened upon the ground of fraud positively charged and proved, or for errors or mistakes specifically set forth and alleged in the answer.—Fonblanque's Equity, 32, and 439, in notes; 1 Maddock's Treat., 102, 103; Comyn on Contracts, 473, in notes; 2 Marshall, 338; 2 Starkie's Ev., 18, 19; Stoughton *vs.* Lynch, 2 Johns. Chan.'Rep., 217; Slee *vs.* Bloom, 20 Johns. Rep., 689; 1 Story's Eq., 497, 501; James *vs.* McKennon, 6 Johns. Rep., 559; Lyon *vs.* Talmadge, 14 Johns. Rep., 516, side page; 3 Wend., 653; 2 Tucker's Com., 417.

4. The evidence rejected by the court was irrelevant to the issue.

NAPTON, J., *delivered the opinion of the Court.*

This was a bill in chancery to compel the conveyance of a lot of ground in Boonville. The bill, answers and replications, are not materially different from what they were in 1840, (see 6 Mo. Rep, 445,) and I shall therefore refer to that opinion for the statement of the issues involved. The only issue, as I then thought, presented by the bill and answers was, whether the settlement between the defendants and Huston and McCullough was final, and embraced the whole amount of the bill of items furnished, or was only partial and conditional, to be subject to a subsequent re-adjustment of the account, and regulated by a new admeasurement of the work.

On the hearing of the case, the Circuit Court confined the testimony to this issue, and refused to hear evidence conducing to prove the exorbitance of sundry items in the bill of charges upon which the alleged settlement was founded, and the action of the Circuit Court in this particular was approved in the opinion given in 1840.

I am still unable to perceive any reason for changing that opinion. The complainant alleges, in his bill, that there was a final settlement between the parties, and that his note to the defendants, for the price of the lot, was embraced in this settlement. The defendants insist that there was no such settlement; they admit that they had a partial settlement, to the amount of $858; but aver, that the note for $340 (given for the lot) was retained to secure them against errors in the settlement or accounts, and that this settlement was made with an understanding between all the parties that the work was to be re-measured and priced by disinterested carpenters, and the bill to be regulated accordingly. If the complainant fails to establish a settlement, such as charged in the bill, he is not entitled to a decree. In this event an inquiry into the correctness of the charges made in the bill of items becomes unnecessary. Proof that there is no settlement, no account stated, examined, and accepted, is sufficient to defeat the bill. On the other hand, if the settlement was established or admitted, to authorize the defendants to open that settlement, and "surcharge and falsify" the account, the defendants must

distinctly charge the mistakes or errors of which they complain. — 4 Vesey, 411; Stoughton *vs.* Lynch, 2 Johns. Chan. Rep., 218.

The defendants, however, do not admit any settlement; no basis is laid for any allegations relative to the falsity or exorbitance of the charges; no distinct and substantive allegations of this character are contained in the answer, and consequently any proof in relation to such matters would be irrelevant to the issue.

The only question remaining to be determined is, whether upon the bill, answer, and evidence in the cause, the Circuit Court was justified in the conclusions to which it arrived, that a final settlement was made between these parties. The details of the testimony are as follows: —

*Huston,* a witness on behalf of complainant, testified, that in August, 1836, he undertook the building of a house for the defendants, Moore & Porter; that about the month of September, complainant, McCullough, entered into partnership with him in this job; that the work was finished in March, 1837; that after the completion of the work, witness and McCullough made out their bill of charges, which amounted to $1198 70, and went to Moore & Porter's shop to settle; that Moore & Porter objected to the bill, as too high; that there was much dispute about the prices; that witness professed his readiness to correct errors, if any existed, but the errors he alluded to were errors in the extension and addition of the account; that defendants proposed that the work should be measured and priced, to which witness assented, but McCullough objected; that the matter was finally settled, and the account equally divided between witness and complainant, without objection from the defendants; that Moore & Porter paid to witness his part of the bill, amounting to $599 35, and settled with McCullough, by paying him some eighty dollars in cash, then deducting the price of the lot mentioned in the bill, and executing their note to him for the balance. The witness understood the matter to be finally settled, and the lot paid for. Witness further stated, that after this settlement McCullough demanded his note for the purchase money of the lot, but Moore & Porter refused to let him have it; he then demanded their note as a set-off against his note, to which Porter assented, provided it should be expressed that it was given for the work done on the house; that Porter thereupon commenced writing a note, with a statement of the consideration for which it was given, but McCullough said he would have none but a plain note; that the accounts were frequently added, and no errors of addition discovered.

*Hood,* another witness for complainant, testified, that on the 3d December, 1836, when the bond for the title of the lot was made by Moore & Porter, McCullough was about to leave the room, without giving his note for the purchase money, when he turned back and observed he had not given his note, but would do so; to which Moore replied, that it was hardly necessary, as he expected that he, McCullough, had already paid for the lot.

*Purdin,* a third witness for complainant, stated, that he had a conversation with Porter shortly after the completion of this carpenter's work by McCullough and Huston, and that Porter told him they had settled; that the charges were high, but rather than have a law suit they had settled, and given McCullough a lot in part payment.

*Williams,* a witness on behalf of defendants, deposed, that he was present at the settlement, or attempt to settle; that Moore & Porter, after objecting to the charges, proposed that the work should be measured and priced by disinterested carpenters, to which Huston & McCullough assented, provided it was done at the expense of said Moore & Porter; that Moore & Porter thereupon paid all the bill, except $340, (the price of the lot,) which they held back to make themselves safe, in case the work should be ascertained, upon measurement, to be overcharged. To this Huston & McCullough agreed, but McCullough wanted a note from Moore & Porter to show that this $340 was coming to him. Moore & Porter at first refused, but Porter wrote a note stating the reasons why it was given, which McCullough declined receiving.

On cross-examination, this witness states that Moore & Porter settled one-half the bill with Huston, and the other half with McCullough; that Huston had nothing to say about the price of the lot; that nothing was said about keeping back Huston's half, or any part thereof; that separate notes were given to Huston and McCullough. In answer to a question, whether the note for the purchase money was not withheld, because Horseley Rea, who had the title, was not in Boonville, and no deed could then be made, witness answered, that, "It was named that they could not make a deed at that time, as Rea was gone." Witness also stated that McCullough demanded a deed for the lot, but did not recollect the reply given to this demand by Moore & Porter. Witness spoke from recollection, but had written notes in a book, from which he admitted he had refreshed his memory. Witness was 23 years old, was a nephew of Porter, and was his apprentice when this settlement was made.

*Newbold,* another witness for defendants, stated that he was in the employment of Moore & Porter when the complainant and Huston presented their bill; that Moore & Porter insisted that the work was charged too high; that there was much dispute on this subject; that Huston and McCullough promised repeatedly during the settlement to correct errors if any appeared; that witness was absent some twenty minutes, and on returning found the parties writing notes. McCullough demanded his note for the purchase money of the lot, but Moore & Porter refused to surrender it. McCullough then asked a note for the same amount, and Porter was willing to give such a note, provided it was expressed in the note for what consideration it was given, but McCullough refused to accept such a note; that the parties broke up in anger.

*Moore,* a witness, testified that he was in the room about the close of the settlement spoken of, and that McCullough appeared to be "in a *pout,*" and that he understood the work was to be measured and priced.

*Cranmer,* another witness, testified that, a short time after this settlement, Moore & Porter informed him that, at the settlement, it was agreed on that the work was to be measured and priced by disinterested carpenters, and all errors, if any, were to be corrected; that witness thereupon called on Huston and McCullough, and informed them what Moore & Porter had said; to which Huston replied, that he had always been, and still was, willing to have the work measured and priced, but McCullough said the matter had been settled; that he had no objection to the

work being measured, but no man should price his work. Witness then told McCullough & Huston, that Moore & Porter had informed him that this was the understanding when they settled; to which McCullough replied, "By G—d, the notes did not show that."

To arrive at any satisfactory conclusions from this mass of contradictory testimony alone, is not an easy matter. Let us revert to the answer of the defendants, and see what facts are admitted, and what denied.

The answer denies that the defendants agreed to pay one-half to Huston, and the other half to McCullough; but avers, that they positively refused to settle, unless upon the understanding that the work was to be measured and priced.

The answer denies that they knew any thing of the partnership between McCullough & Huston until they were called on for a settlement; and avers that they looked to Huston alone, as the responsible person with whom they contracted; admits, however, 'that they were informed of this partnership when the settlement was made, and that they paid to Huston one-half of the bill, and to complainant about $259, being the balance of his share, after deducting the price of the lot; admits that McCullough demanded a note for $340, but declares that they refused to give any note unless upon considerations expressed, &c.

How, then, does this transaction appear, as it is set up in the answer? Here it is admitted, that defendants knew, at the time of the attempted settlement, of the copartnership between McCullough and Huston, and that Huston was entitled to one-half of the bill, and McCullough to the other half; it is admitted that there was a final settlement, so far as Huston's half was concerned, and that they also gave their note to McCullough for a sum which, when added to the $340, (the price of the lot) exactly amounts to his half of the account. This transaction, by itself, unaccompanied with any other acts or declarations, would seem to constitute a complete settlement of the account, except so far as the note for the $340 is concerned, and the defendants accordingly aver, that this note was retained by them, with the consent of McCullough & Huston, to secure them, in the event an abatement of prices should be affected, by the measurement of the work, which was agreed upon between all parties.

It must be apparent, that this history of the transaction is intrinsically improbable, and unless established by clear and undisputed testimony, would not be likely to gain credence. It may be, that the defendants retained the note for $340 with the intentions and views which they avow in their answer; but it is most unreasonable to suppose that McCullough had any such expectations, or consented to any such arrangement. Would McCullough stand by and see his partner paid off in money or notes, to the full amount of his part of the bill, and agree to accept only a part of his share of the account, with an understanding that all deficiencies to be discovered in the new measurement agreed upon should come out of his share?

It is not a little singular that the defendants should have paid off Huston, who is declared in their answer to have been the only one responsible on the building contract, and the person to whom they looked alone for the proper completion of the job, and retain their hold only on the subordinate, McCullough, whom they

professed not to know in the business, until they were informed, at the settlement, of the extent of his interest.

If we look at the testimony, it must be acknowledged that there is a good deal of contradiction; but I think the statements of most of the witnesses may be reconciled with the hypothesis of a final settlement, but cannot be reconciled with the statement the defendants desire to establish.

The deposition of Williams is direct and positive to establish the understanding set up by defendants, that there was a new measurement agreed upon, and that this note for the lot was not embraced in the settlement. The testimony of Huston is direct and positive to the contrary. Laying aside the statements of these two witnesses, who we may suppose were not altogether impartial and unbiassed observers of this transaction, the testimony of Purdin, of Newbold, Cranmer and Moore, may be easily reconciled.

Newbold states that there was a good deal of disputation and angry words passing between these parties, during the entire time occupied in *attempting to settle*; that he was absent for some time, and on his return found the parties engaged in writing notes, and that McCullough demanded his note for the purchase money of the lot.

Here it may be remarked, that Williams testified, that McCullough & Huston *agreed* that this note for the lot should be retained by Moore & Porter, to secure themselves. It is remarkable that McCullough should, when the settlement of his share was about being arranged, have the effrontery to demand what he had just before agreed should be retained by Moore & Porter.

The testimony of Huston corresponds, in this particular, with that of Newbold. They agree that McCullough demanded his note; and that though Moore & Porter refused to give it up, yet they proffered him a note of corresponding amount, provided the consideration should be expressed on its face.

The witnesses not only agree as to this important fact, but the answer admits that they offered to McCullough a note for the same amount as the one they held on him for the lot.

The circumstance of the retention of this note by Moore & Porter, is the only fact in the case which we think militates against the supposition of a complete settlement. If this can be accounted for from other disclosures made by the witnesses, there can be no difficulty in concluding that there was a settlement.

There is no evidence as to the real motive of these parties in retaining this note. It may be that it was done with the intention and understanding avowed in the defendant's answer; but to suppose that this was the real and avowed motive, would be to suppose a fact which we have seen is utterly inconsistent with every other fact in the case. The testimony of Williams, one of the defendant's witnesses, enables us to suppose a motive consistent with a settlement. It appears that *Rea*, who held the legal title of this lot, was absent when this settlement was made; and if we suppose that the defendants were unwilling to part with this note, until they could take up their bond by giving a conveyance for the lot, the hypothesis is not inconsistent with the other circumstances. Williams says, that something was " named relative to Rea's absence."

It is true that the conduct of the parties in this particular, supposing this to have been the true reason for their withholding the note, is not such as would have occurred in a transaction between persons conversant with their legal rights and liabilities ; but these parties were not lawyers, and might, naturally enough, have concluded that it was fair and right that the title bond and note should be delivered up at the same time.

The testimony of Cranmer only tends to show, that Moore & Porter, some short time after the settlement, regarded their possession of the note as authorizing them to open this settlement ; and represented to Cranmer that such was the understanding of all the parties when the settlement was made. The answer of McCullough, when this communication of Moore & Porter's intentions was made to him, shows that it was very far from being so understood by him. When the witness informed him of the defendants' wish to have the whole work re-measured and priced, he said he had no objections to the measurement, but that no man should price his work ; but when informed that Moore & Porter delared this to be the agreement made at the settlement, the language of his reply evinces astonishment and indignation. It would seem that he was then, for the first time, aware of the defendants' motives in retaining his note.

Upon the whole, it must be conceded, that there is much of this testimony which cannot be reconciled with any reasonable hypothesis, and must be rejected as the result of inattention, prejudice, or a wilful perversion of the truth. Questions of this character could be more satisfactorily settled by a jury, when by oral examinations the credibility of the witnesses can be better tried than upon written testimony. But this is a matter of discretion with the chancellor ; and as two successive courts have passed upon this case, and in each instance decreed for the complainant, I feel strengthened in my present convictions that the decree is right.

Judgment affirmed.

TOMPKINS, *Judge.* — I do not concur in this opinion.

SCOTT, *Judge.* — I did not sit in this cause ; and the judgment of the Circuit Court is affirmed by a division of the Court.